

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2005

# Mahmood v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mahmood v. Atty Gen USA" (2005). *2005 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3760

SYED MAHMOOD,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General
of the United States,

Respondent

*Substituted pursuant to Rule 43c, F.R.A.P.

On Appeal from an Order entered before
The Board of Immigration Appeals
(No. A 70-891-107)

Argued September 15, 2004

Before: ALITO, AMBRO and FISHER, Circuit Judges

(Filed October 27, 2005  )

Robert Frank, Esquire (Argued)
Suite 1304
60 Park Place
Newark, NJ   07102

      Attorney for Petitioner


Peter D. Keisler
   Assistant Attorney General, Civil Division
Barry J. Pettinato
   Senior Litigation Counsel
David V. Bernal, Esquire
Douglas E. Ginsburg, Esquire
John D. Williams, Esquire
William M. Martin, Esquire (Argued)
United States Department of Justice
Office of Immigration
Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C.   20044

      Attorneys for Respondent

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Syed Mahmood petitions for review of the decision by the Board of Immigration Appeals ("BIA") dismissing his appeal by agreeing with the Immigration Judge's ("IJ") denial of his motion to reopen as untimely filed. Though we conclude that Mahmood's allegations of ineffective assistance of counsel provide a basis for equitably tolling the relevant filing deadlines, we nonetheless deny the petition because he failed to exercise the requisite degree of diligence.

## I.    Facts and Procedural History

Mahmood, a native and citizen of Bangladesh, entered the United States in February 1993. In June 1997, the former Immigration and Naturalization Service ("INS")[1] concluded that Mahmood had presented invalid documents when he entered the United States and issued to him a Notice to Appear for possible removal. Mahmood, however, failed to appear for his hearing before an IJ in January 1998, and he was ordered removed *in absentia* under 8 U.S.C. § 1229a(b)(5)(A). He moved to reopen the proceedings. After determining that Mahmood had been severely ill and unable to attend the hearing, the IJ concluded

---

[1]Effective March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security ("DHS").

that "exceptional circumstances" warranted granting the motion. *See* 8 U.S.C. § 1229a(b)(5)(C)(i) (providing that an *in absentia* removal order may be rescinded "if the alien demonstrates that the failure to appear was because of exceptional circumstances").

The IJ scheduled another hearing in March 1999, but again Mahmood did not appear, and again the IJ ordered his removal *in absentia*. In April 1999, he filed a second motion to reopen, asserting a medical procedure had prevented him from appearing for the rescheduled hearing. The IJ concluded that the procedure (removal of a perirectal abscess) was not sufficiently serious to constitute exceptional circumstances and denied the motion in May 1999. Included in the certified administrative record is a cover letter—addressed to Charles Grutman, Mahmood's counsel at that time, and dated June 1, 1999—purporting to attach the IJ's decision.

Well over a year later, in November 2000, Grutman received a "bag and baggage" letter ordering Mahmood to report for removal to Bangladesh. In response, Grutman wrote to the IJ and asserted that he had never been notified of the denial of the motion to reopen.[2]

---

[2]The letter stated:

[Mahmood] appeared in front of you for a political asylum case. On the date for the

4

In December 2000, Mahmood's counsel appealed the May 1999 order to the BIA, and it dismissed the appeal as untimely in 2002. Mahmood retained new counsel and filed his third motion to reopen in July 2002, alleging ineffective assistance of counsel and seeking an adjustment of status in light of an approved I-130 petition filed by Karen Mahmood (née Zimmerman), who had married Mahmood in April 2001. The IJ denied the motion on the ground that it had been filed over three years after the IJ issued the *in absentia* order (that was the

individual hearing, he failed to appear, and a motion to reopen was filed on April 30, 1999. Your office sent my office a letter dated 05/11/99, [giving] us ten days to make representations relative to the motion.

After that letter, neither my client nor I heard anything from the [United States Department of Justice Executive Office for Immigration Review], nor from [the INS], until today, when he received a bag and baggage letter calling for his departure on December 20, 2000. I called the national hotline and was informed that you had denied the motion on May 28, 1999, but we never received the denial. As we never received the denial, it was not possible to appeal your decision.

Please send me a copy of the denial.

subject of the second motion to reopen), and thus long after the applicable time limits for moving to reopen had passed. The BIA dismissed Mahmood's appeal in June 2001, and he timely petitioned for our Court's review.

## II.    Standard of Review

We review a final order of the BIA denying a motion to reopen for abuse of discretion. *Cf. INS v. Doherty*, 502 U.S. 314, 323 (1992). Review of the BIA's legal conclusions is *de novo*, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). Findings of fact may not be disturbed if supported by substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B); *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (*en banc*).

## III.    Discussion

### A.    Equitable Tolling and Ineffectiveness of Counsel

Generally, a motion to reopen must be filed within 90 days of the date of entry of a final administrative order of

6

removal.  8 U.S.C. § 1229a(c)(7)(C)(i).[3]  With respect to *in absentia* orders of removal, an alien has 180 days to file a motion to reopen that seeks to demonstrate that the failure to appear was because of "exceptional circumstances."  8 U.S.C. § 1229a(b)(5)(C)(i).  The BIA concluded that the Mahmood's motion was untimely under both deadlines.[4]

When this petition for review was filed, courts of appeal were divided over whether the deadlines in 8 U.S.C. § 1229a for moving to reopen *in absentia* orders of removal were mandatory and jurisdictional or, like a statute of limitations, subject to equitable tolling.  *Compare, e.g.*, *Anin v. Reno*, 188 F.3d 1273, 1278 (11th Cir. 1999) (holding that the 180-day deadline in former 8 U.S.C. § 1252b(c)(3)(A) for filing motions to reopen deportation proceedings is "jurisdictional and mandatory"), *with Pervaiz v. Gonzales*, 405 F.3d 488, 490–91 (7th Cir. 2005) (holding that the 180-day statutory deadline for motion to reopen

---

[3]The 90-day limitation was codified at 8 U.S.C. § 1229a(c)(6)(C)(i) prior to Congress's enactment of the REAL ID Act of 2005, Pub. L. 109-13, div. B, § 101(d), 119 Stat. 231, 304 (2005), which redesignated paragraph (c)(6) as paragraph (c)(7).

[4]Because Mahmood was moving to reopen the proceedings to seek an adjustment of status, the BIA applied the general rules of paragraph (c)(7) as well as paragraph (b)(5)(C)'s particular rule for rescinding an order of removal entered *in absentia*.

*in absentia* proceedings is not jurisdictional and remanding for further proceedings in light of counsel's alleged ineffective assistance), *Iavorski v. INS*, 232 F.3d 124, 131, 134 (2d Cir. 2000) (holding that the 90-day period provided in former 8 C.F.R. § 3.23(b)(1) for filing motions to reopen is subject to equitable tolling based on ineffective assistance of counsel), *and Lopez v. INS*, 184 F.3d 1097, 1099–1100 (9th Cir. 1999) (holding that the time limit for motion to reopen an order of deportation under former 8 U.S.C. § 1252b(c)(3)(A) is subject to equitable tolling).[5]

Subsequently, in *Borges v. Gonzales*, 402 F.3d 398 (3d Cir. 2005), we held that the § 1229a(b)(5)(C)(i) deadline is "appropriately considered as analogous to a statute of limitations and, thus, subject to equitable tolling." *Id*. at 406. In reaching this holding, we cited the "old chancery rule" for tolling on the

---

[5]A motion to reopen based on lack of sufficient notice may be filed "at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii). The BIA found that the IJ's decision was mailed to Grutman on June 1, 1999, and that finding is supported by substantial evidence—specifically, the cover letter described above. In view of this finding—and regulations and caselaw establishing that service on an alien's counsel is equivalent to service on the alien in these circumstances—Mahmood cannot rely on the "at any time" provision in § 1229a(b)(5)(C)(ii). *See Bejar v. Ashcroft*, 324 F.3d 127, 131 (3d Cir. 2003) (citing 8 C.F.R. § 292.5).

8

ground of fraud. *Id*.; *see also Lopez*, 184 F.3d at 1100 (discussing the "old chancery rule" providing that where a party "has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered" (internal quotation marks omitted)); *Reuther v. Trs. of Trucking Employees*, 575 F.2d 1074, 1078–79 (3d Cir. 1978).[6]

Nevertheless, unlike the alien in *Borges*, who alleged that he had been defrauded by an attorney and the attorney's paralegal,[7] Mahmood alleges that his attorney failed to notify

---

[6]Discussing the "old chancery rule" in *Reuther* (which *Borges* cites), we "recogniz[ed] that the case before us [did] not involve fraud," but concluded nonetheless, based on "equitable principles," that it "present[ed] a factual complex in which there was 'no want of diligence or care'" on the part of the party seeking to invoke the equitable tolling doctrine. 575 F.2d at 1079. We held that the statute of limitations was subject to tolling. *Id*.

[7]Specifically, Borges alleged that he was defrauded into believing that a licensed attorney was doing all of his legal work (when instead work was being performed by a paralegal), his case was proceeding smoothly, and if he appeared for a scheduled hearing he would be removed. *Borges*, 402 F.3d at 405. Although *Borges* only dealt directly with the 180-day deadline in § 1229a(b)(5)(C)(i), we believe its reasoning also applies to the 90-day deadline in § 1229a(c)(7), as the statute is

9

him of the IJ's adverse ruling. At first glance, these allegations appear to be similar to those at issue in *Bejar v. Ashcroft*, 324 F.3d 127 (3d Cir. 2003), which the Government contends controls the outcome here by dooming (in the Government's view) claims for tolling based on ineffective assistance of counsel. In *Bejar*, the alien, who was removed *in absentia*, alleged ineffective assistance based on her counsel's failure to notify her of the IJ's adverse ruling, though Bejar admitted that she had moved to another residence. *Id*. at 129–31. Without deciding whether ineffective assistance of counsel can serve as a basis for tolling, we concluded that Bejar's counsel "did not render assistance sufficiently ineffective to justify tolling" the applicable deadline. *Id.* at 131 n.1.

As an initial matter and as already noted, other courts of appeal have recognized that ineffective assistance can serve as a basis for equitable tolling in immigration cases. *Bejar*, which was decided pre-*Borges*, does not suggest that ineffective assistance is not a possible basis for tolling once one accepts, as we must in light of *Borges*, that the deadlines are subject to tolling in at least some circumstances.

Further, *Bejar* is distinguishable. Unlike Mahmood, Bejar contributed to her lack of notice by moving residences and failing to provide counsel with her new address. Moreover, counsel's receipt of the notice was undisputed in *Bejar*. Here,

best analyzed as an integrated whole.

10

Grutman's letter (claiming he received no notice) is in tension with the BIA's finding that notice was sent. In this context, there are a number of possible scenarios. For example, it is possible that Grutman's failure to forward notice to Mahmood was the result of his or his staff's mishandling of the letter, perhaps through mere inadvertence or perhaps through gross deficiencies in his office's administrative procedures. It also possible, as Mahmood asserts, that Grutman received the notice, never forwarded it to him, and then made misrepresentations to him and the Court by claiming he (Grutman) had never received it. Even worse, Grutman may have agreed to represent Mahmood (and accepted payment) without intending ever to represent his client adequately. Thus, through no fault of his own (in his version of the events), Mahmood was deprived of further proceedings in this case. In this context, the allegations of ineffective assistance would warrant further consideration by the BIA or IJ (which issued their decisions well before *Borges*), except that for the reasons discussed below his claims fail for lack of diligence.[8]

---

[8]Because any discussion of what Grutman may have done or failed to do would be largely speculative, in light of Mahmood's lack of diligence we do not attempt to define generally what qualifies as ineffectiveness sufficient to justify tolling. Judge Alito joins Part III.A of this opinion solely because *Borges* is binding Circuit precedent.

11

## B. Due Diligence

Though the attorney conduct at issue is sufficient, if substantiated, to provide a basis for equitable tolling, Mahmood's claims still fail for lack of diligence. *Cf. Borges,* 402 F.3d at 407 (discussing the Government's argument that the alien was ineligible for relief because he did not exercise due diligence); *Iavorski*, 232 F.3d at 134–35 (holding that ineffective assistance of counsel provided a basis for equitable tolling but concluding that the alien's claim was time-barred because the alien had not exercised due diligence); *Lopez*, 184 F.3d at 1100 (adopting "the old chancery rule that where a plaintiff has been injured by fraud and remains in ignorance of it *without any fault or want of diligence or care on his part*, the bar of the statute does not begin to run until the fraud is discovered" (emphasis added) (internal quotation marks omitted)).

Mahmood has failed to come forward with evidence that he acted with such diligence. Indeed, he failed to submit an affidavit, instead resting entirely on Grutman's letter as the basis for tolling. Here, the IJ ruled on Mahmood's first motion to reopen—and Mahmood received a copy of that ruling—less than 90 days after he filed that motion. Yet, if we accept Mahmood's suggestion that he was unaware of the denial of the second motion until December 2000, when he received the "bag and baggage" letter, there is no indication in the record that Mahmood took any steps to inquire about the status of his case

12

during the more than eighteen months that passed between the denial of his motion and the time that he received that letter, notwithstanding that it took far less time for him to receive the ruling on the first motion to reopen.

Furthermore, there is an additional time period that passed without any suggestion of diligence. The BIA dismissed Mahmood's untimely appeal in June 2001, but it was not until more than a year later, in July 2002, that he filed the third motion to reopen. Moreover, there is no indication that he was attempting to seek new counsel or otherwise taking steps to pursue his immigration case during this period.

Whether an alien has exercised due diligence generally should be determined by the IJ in the first instance, and typically a remand would be in order absent a finding of diligence (or lack thereof). *Cf. INS v. Ventura*, 537 U.S. 12, 16 (2002) (*per curiam*) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). When the outcome is clear as a matter of law, however, remand is not necessary. *See Borges*, 402 F.3d at 407 (concluding that the alien had exercised due diligence as a matter of law). Though it is good to "bear[] in mind that [Mahmood] is a foreigner who may, therefore, have more than the average difficulty in negotiating the shoals of American law," *Pervaiz*, 405 F.3d at 491, we are also mindful that "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly," *Hedges v. United States*, 404 F.3d

13

744, 751 (3d Cir. 2005). Taken together, these periods of unaccounted-for delay reveal a lack of diligence, and thus Mahmood is not entitled to tolling.

* * * * *

In this context, we deny the petition for review.