**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2249
_____

MIN DONG WU,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A094-941-414)
Immigration Judge:  Jeffrey L. Romig
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 8, 2024
_____

Before:  CHAGARES, <u>Chief Judge</u>, PORTER and SCIRICA, <u>Circuit Judges</u>

(Filed April 10, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Min Dong Wu ("Wu") petitions this Court for review of a Board of Immigration Appeals ("BIA") order denying his motion to reopen. For the reasons that follow, we will dismiss in part and deny in part the petition for review.

I.[1]

Wu, a native and citizen of China, has been in the United States without permission since 2006. He was served with a Notice to Appear ("NTA") in 2007. He conceded removability before an Immigration Judge ("IJ") and applied for asylum, withholding of removal, and protection under the Convention Against Torture on account of religious persecution. The IJ denied relief and ordered his removal. The BIA dismissed his appeal.

Wu remained in this country; he had a United States citizen son in October 2011 and married a legal permanent resident in 2014. He filed a motion to reopen with the BIA in 2018, arguing under Pereira v. Sessions, 585 U.S. 198 (2018), that, because the NTA initiating his case failed to specify a date and time for the removal hearing, the immigration court lacked jurisdiction over him. The BIA denied the motion.

Wu filed a second motion to reopen on July 23, 2021. He sought permission to return to the IJ to apply for cancellation of removal, claiming he is statutorily eligible for that relief because, among other things, his removal would cause exceptional and extremely unusual hardship to his wife and son, and he has been physically present in this

---

[1] Because we write for the parties, we recite only those facts pertinent to our decision.

country for more than ten years.  See 8 U.S.C. § 1229b(b)(1).  He argued that he became eligible for cancellation of removal when the Supreme Court decided Niz-Chavez v. Garland, 593 U.S. 155, 161 (2021), and that the case marked a change in the law that warranted reopening his case.  Wu also asked the BIA to grant sua sponte reopening for the same reasons.  The BIA denied Wu's motion.  This timely petition for review followed.

## II.[2]

### A.

Motions to reopen are disfavored and are granted only under compelling circumstances.  Darby v. Att'y Gen., 1 F.4th 151, 159 (3d Cir. 2021).  We review the BIA's denial of a motion to reopen for abuse of discretion.  Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).  The decision will be reversed only if it is arbitrary, irrational, or contrary to law.  Id.

The regulations generally permit one motion to reopen, which must be filed within 90 days of the removal order.  See 8 C.F.R. § 1003.2(c)(2).[3]  Wu acknowledges that the motion to reopen was his second and was filed more than 90 days after his removal order but claims the BIA should have equitably tolled the limitations because he filed the motion "within 90 days of discovering . . . [his] new eligibility for cancellation of

---

[2] The BIA had jurisdiction over the motion to reopen under 8 C.F.R. § 1003.2.  We generally have jurisdiction to review the denial of a motion to reopen under 8 U.S.C. § 1252(a)(1).  See Khan v. Att'y Gen., 691 F.3d 488, 492 (3d Cir. 2012).

[3] The time and number limitations do not apply in certain circumstances, such as a motion to reopen based on changed country conditions.  See 8 C.F.R. § 1003.2(c)(3)(ii).  Wu does not claim that such circumstances apply here.

3

removal in light of the <u>Niz-Chavez</u> decision." Wu Br. 12.

Wu is correct that limitations on filing a motion to reopen may be subject to equitable tolling. <u>See</u> <u>Alzaarir v. Att'y Gen.</u>, 639 F.3d 86, 90 (3d Cir. 2011) ("The time limit for filing a motion to reopen is subject to equitable tolling, and perhaps the numerical limit is as well."). Equitable tolling is only available, however, if Wu pursued his rights diligently and extraordinary circumstances prevented him from filing sooner. <u>See</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005). Wu has demonstrated neither.

The BIA correctly observed that Wu was statutorily ineligible for cancellation of removal during his original immigration proceeding. At that time, he did not have any qualifying relatives and had only been in the United States a short time. A final removal order was entered and, with the passage of time, Wu later acquired additional years of physical presence in the United States and qualifying family members. The BIA determined that these subsequent events did not constitute "extraordinary circumstances" for purposes of equitable tolling. This was not an abuse of discretion. Wu fails to cite any binding case holding that a new purported entitlement to relief arising after entry of a final removal order requires equitable tolling of the period for reopening.

Wu also was not diligent in pursuing his motion, as he could have presented his argument about achieving ten years of physical presence in the United States (and thus his purported eligibility for cancellation of removal) well before July 2021. Wu was served with an NTA in 2007. Under the "stop-time rule," service of an NTA generally ends the accrual of an individual's physical presence in this country for purposes of cancellation of removal. <u>See</u> <u>Nkomo v. Att'y Gen.</u>, 930 F.3d 129, 132 (3d Cir. 2019).

4

Wu claims that his NTA was defective because it omitted the time and date of his hearing and therefore did not trigger the stop-time rule in 2007, so he continued to accrue "credit" for his physical presence in the United Sates. He argues he first learned of this claim in April 2021, when the Supreme Court decided Niz-Chavez. Yet the claim was available prior to Niz-Chavez.

The Supreme Court held in 2018 that a defective NTA does not trigger the stop-time rule. See Pereira, 585 U.S. at 202. Two years later, applying Pereira, we held that a defective NTA cannot be cured by a subsequent notice providing the time and date of the hearing, so the subsequent notice also does not trigger the stop-time rule. Guadalupe v. Att'y Gen., 951 F.3d 161, 164 (3d Cir. 2020). The Supreme Court's Niz-Chavez decision the following year reached the same conclusion as Guadalupe. 593 U.S. at 161. Wu thus could have argued that the stop-time rule does not apply to him based on Guadalupe in 2020, if not in 2018 when the Supreme Court decided Pereira, or perhaps even sooner. See Chavez-Chilel v. Att'y Gen., 20 F.4th 138, 144 n.7 (3d Cir. 2021) (observing that arguments about defective NTAs have been available since before Pereira).

Wu need not have waited for Niz-Chavez to claim that the stop-time rule does not apply to him, so it is clear as a matter of law that his decision to delay filing his motion until July 2021 does not reflect the diligence necessary for equitable tolling. See Mahmood v. Gonzales, 427 F.3d 248, 253 (3d Cir. 2005). The BIA thus did not abuse its discretion in declining to equitably toll the limitations for his second, untimely motion to

reopen.[4]

B.

Because Wu's motion was time- and number-barred and not subject to equitable tolling, his remaining option for reopening was sua sponte relief under 8 C.F.R. § 1003.2(a), which grants the BIA discretion to reopen a case at any time.[5] We lack jurisdiction to review a discretionary denial of sua sponte reopening. Pllumi v. Att'y Gen., 642 F.3d 155, 159 (3d Cir. 2011). We do, however, have jurisdiction to consider whether the BIA misperceived the relevant law. Id.

Wu contends that the BIA failed to apply the proper "legal background" for assessing exceptional circumstances. Wu Br. 14. He further contends that Niz-Chavez is a fundamental change in law warranting reopening. Yet the BIA considered Niz-Chavez and evaluated whether Wu presented exceptional circumstances, and Wu has not identified any "false legal premise" on which the BIA relied. Pllumi, 642 F.3d at 160. We are unpersuaded that Wu has invoked our jurisdiction by raising a colorable claim that the BIA misperceived the relevant law. See Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010) (observing that a legal claim is not colorable if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous).

---

[4] Wu's motion was also procedurally defective because it was not accompanied by an application for cancellation of removal. See 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation.").

[5] Sua sponte reopening is a misnomer because a motion is required; it is actually a request to the BIA to waive the procedural requirements for a motion to reopen and exercise its discretion to reopen the proceeding. See Darby, 1 F.4th at 164 n.3.

6

We therefore will dismiss his challenge to the denial of <u>sua</u> <u>sponte</u> reopening for lack of jurisdiction.

III.

For the foregoing reasons, we will dismiss the petition for review in part for lack of jurisdiction to the extent it challenges the BIA's denial of <u>sua</u> <u>sponte</u> reopening and will deny it in remaining part.